COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
    
                                        
NOS.    2-03-149-CV
2-03-150-CV
2-03-151-CV
  
  
C. DIANNE SHELTON AND                                                    APPELLANTS
BOB J. SHELTON
 
V.
 
SCOTT SARGENT, M.D.,                                                         APPELLEES
ARLINGTON MEMORIAL HOSPITAL,
ARLINGTON CANCER CENTER
AND JOSHUA RETTIG, M.D.
 
  
------------
 
FROM THE 342nd DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. INTRODUCTION
        In 
these consolidated proceedings, appellants C. Dianne Shelton and Bob J. Shelton 
appeal the trial court’s grants of summary judgment for appellees Scott 
Sargent, M.D., Arlington Memorial Hospital, Arlington Cancer Center, and Joshua 
Rettig, M.D. We will affirm.
II. FACTUAL BACKGROUND
        On 
March 13, 1997, appellant Dianne Shelton underwent mammography and sonography 
screening of her right breast at Arlington Cancer Center (“ACC”). 
Radiologist Joshua Rettig, M.D. evaluated the results of these procedures, 
identified cysts and a “suspicious soft-tissue mass” in the breast, and 
recommended further assessment.[1]  Surgeon Jerry 
Bane, M.D. performed a biopsy of the mass at Arlington Memorial Hospital (the 
“Hospital”) with radiologist Scott Sargent, M.D., who performed a hook wire 
localization procedure to pinpoint the area for biopsy.  Pathology tests 
reported that the mass was noncancerous.
        Approximately 
one year later, Mrs. Shelton underwent additional mammography screening at the 
Hospital, complaining of continued pain in one of the lumps identified as cysts 
in the prior year’s sonogram.  The Hospital’s staff radiologist 
recommended another biopsy, which Dr. Bane performed shortly thereafter on May 
27, 1998.  The pathology report for this biopsy identified the tissue as 
infiltrating duct-cell carcinoma that required an immediate mastectomy of the 
entire right breast.  The Sheltons sought a second opinion from surgical 
oncologist J. Valerie Ravan Andrews, M.D., who also advised a mastectomy.  
Dr. Andrews performed a modified radical mastectomy of Mrs. Shelton’s right 
breast on June 4, 1998.
        The 
Sheltons sued Arlington Surgical Association, Dr. Bane, ACC, Dr. Rettig, the 
Hospital, and Dr. Sargent on June 14, 1999, seeking compensatory and punitive 
damages for alleged medical negligence in the delayed diagnosis of Mrs. 
Shelton’s breast cancer. The Sheltons’ second amended petition, filed 
October 31, 2000, added a negligence per se theory of recovery by alleging that 
the defendants were negligent as a matter of law for failing to comply with the 
Federal Mammography Quality Standards Act of 1992[2]  
and the Texas Cancer Incidence Reporting Act.[3]   
After all appellees filed separate motions for summary judgment, the Sheltons 
pleaded a res ipsa loquitur theory of negligence in addition to their 
claims of negligence and negligence per se by filing their third amended 
petition on February 12, 2003.
        In 
their responses to appellees’ motions for summary judgment, the Sheltons 
requested the trial court to “take judicial notice of the Court’s file as it 
relates to all Defendants in this matter” along with federal and state 
statutes and regulations relating to mammography standards and cancer 
registry.  The Sheltons also designated evidence to support their response, 
including an affidavit of their expert witness, Dr. Andrews.
        Appellees 
filed their written objections to Dr. Andrews’s affidavit on February 18, 
2003, and the trial court sustained these objections at the summary judgment 
hearing on February 20, 2003.  The trial court then granted each 
appellee’s motion for summary judgment on March 6, 2003 and severed the claims 
against each appellee from the rest of the case.  The Sheltons subsequently 
sought leave to file an amended affidavit of Dr. Andrews and an affidavit of 
Sandra K. Garrido, a former investigator for the Food and Drug 
Administration.  The trial court denied this request, along with the 
Sheltons’ motion for reconsideration, on June 4, 2003.  The Sheltons now 
appeal, contending in six issues that the trial court erred by excluding their 
expert testimony and granting summary judgment against them for lack of 
evidence.
III. LAW AND APPLICATION TO FACTS
A. Objections to Summary Judgment Evidence
        In 
their second issue, the Sheltons argue that the trial court erred by striking 
Dr. Andrews’s affidavit. One argument that the Sheltons advance in support of 
this issue is that the trial court sustained appellees’ objections to Dr. 
Andrews’s affidavit and other summary judgment evidence erroneously because 
the objections were not timely filed.  The Sheltons assert that McConnell 
v. Southside Independent School District, 858 S.W.2d 337, 343 (Tex. 1993), 
requires appellees to file their objections at least three days prior to the 
summary judgment hearing.  In McConnell, the Texas Supreme Court 
stated that rule 21 of the Texas Rules of Civil Procedure requires the party 
moving for summary judgment to file and serve any exceptions to the nonmovant's 
response not less than three days prior to the summary judgment hearing.  Id. 
at 343 n.7; see Tex. R. Civ. 
P. 21.  A movant’s exception in these circumstances is a complaint that 
the issues identified in the nonmovant’s response as defeating summary 
judgment are unclear or ambiguous.  See McConnell, 858 S.W.2d at 
343.
        Appellees 
did not file exceptions to the Sheltons’ response; rather, they filed 
objections to the competency of the Sheltons’ evidence.  Rule 166a, which 
establishes the procedure for summary judgment proceedings, does not impose a 
deadline by which a movant must file its reply (including objections) to a 
nonmovant’s response.  See Tex. 
R. Civ. P. 166a(c); Knapp v. Eppright, 783 S.W.2d 293, 296 (Tex. 
App.—Houston [14th Dist.] 1989, no writ); Wright v. Lewis, 777 S.W.2d 
520, 522 (Tex. App.—Corpus Christi 1989, writ denied).  As a result, the 
trial court was within its discretion to consider appellees’ objections.
        Over 
a month after the trial court granted appellees’ motions for summary judgment, 
the Sheltons filed motions for leave to file Dr. Andrews’s amended affidavit 
and Sandra K. Garrido’s affidavit, which the trial court denied.  The 
Sheltons contend that the trial court erred by refusing to consider their 
additional affidavits in ruling on appellees’ motions for summary judgment, 
but they have included no citation to legal authority or a discussion of the 
facts with appropriate record references to support their position.  We do 
not have a duty to perform an independent review of the record and applicable 
law to determine whether the error complained of occurred.  Hall v. 
Stephenson, 919 S.W.2d 454, 466-67 (Tex. App.—Fort Worth 1996, writ 
denied).  Accordingly, the Sheltons have waived this complaint, and we will 
not address it.  See Fredonia State Bank v. Gen. Am. Life Ins. Co., 
881 S.W.2d 279, 284 (Tex. 1994) (citing long-standing rule that a point may be 
waived due to inadequate briefing).  We overrule this portion of the 
Sheltons’ second issue as to all appellees.
B. Judicial Notice of Discovery on File
        The 
Sheltons argue in their third issue that the trial court erred in failing to 
take judicial notice of the depositions on file with the court. In their 
responses to appellees’ motions for summary judgment, the Sheltons requested 
the trial court to “take judicial notice of the court’s file as it relates 
to all Defendants in this matter.”  The Sheltons then went on to attach 
evidence to their responses, stating that they were relying on appellees’ 
pleadings and the attached evidence in support of their responses to the motions 
for summary judgment.  The Sheltons now contend that the trial court should 
have considered various evidence in the court’s file in addition to the 
evidence attached to their responses, including the deposition of Harry 
Feuerberg, M.D., even though the Sheltons attached only a few pages of Dr. 
Feuerberg’s deposition to their responses to the Hospital’s and Dr. 
Sargent’s motions for summary judgment and did not refer to the deposition at 
all in support of their response to ACC and Dr. Rettig’s motion for summary 
judgment.
        The 
Sheltons’ responses to appellees’ motions for summary judgment request the 
trial court to take judicial notice of “the Court’s file.”  Even if 
depositions and other evidence are contained in the trial court’s file, “a 
general reference to a voluminous record [that] does not direct the trial court 
and parties to the evidence on which the movant relies is insufficient.”  
Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 81 (Tex. 1989).  The 
Sheltons did not cite, quote, or otherwise point out to the trial court the 
testimony they relied upon from Dr. Feuerberg’s deposition to create a fact 
issue.  The trial court was not required to search its file for summary 
judgment evidence raising a genuine issue of material fact without more specific 
guidance from the Sheltons.  See Blake v. Intco Invs. of Tex., Inc., 
123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.); see also Guthrie 
v. Suiter, 934 S.W.2d 820, 826 (Tex. App.—Houston [1st Dist.] 1996, no 
writ) (holding that trial court did not abuse its discretion by refusing to 
consider a five hundred page deposition attached to the nonmovant’s response 
when the nonmovant did not point out to the trial court where in the deposition 
the issues set forth in the response were raised).  We overrule the 
Sheltons’ third issue as to all appellees.
C. Res Ipsa Loquitur
        In 
their fourth and fifth issues, the Sheltons contend that even with the trial 
court’s striking Dr. Andrews’s affidavit, the trial court erred in granting 
summary judgment to appellees because the doctrine of res ipsa loquitur 
and the “basic and obvious” nature of appellees’ alleged negligence make 
expert testimony unnecessary in this case.
        Generally, 
the issues of medical negligence and causation require expert testimony.  Arlington 
Mem’l Hosp. Found., Inc. v. Baird, 991 S.W.2d 918, 922 (Tex. App.—Fort 
Worth 1999, pet. denied).  Res ipsa loquitur applies when the injury 
is a type that would not ordinarily occur in the absence of negligence and when 
the instrumentality causing the injury was under the defendant’s management 
and control.  Haddock v. Arnspiger, 793 S.W.2d 948, 950 (Tex. 
1990).  Res ipsa loquitur is generally inapplicable to medical 
malpractice cases except those in which the nature of the alleged malpractice is 
plainly within the common knowledge of laymen, making expert testimony 
unnecessary.  Id. at 951.  Examples of such cases include 
negligence in the use of mechanical instruments, operating on the wrong portion 
of the body, or leaving surgical instruments or sponges within the body.  Id.
        In 
Odak v. Arlington Memorial Hospital Foundation, 934 S.W.2d 868, 873 (Tex. 
App.—Fort Worth 1996, writ denied), the plaintiff’s newborn child suffered 
swelling and burns while in the defendant hospital’s nursery, allegedly from 
an intravenous medication.  The plaintiff argued that res ipsa loquitur 
applied to her case because it is commonly known that infants do not suffer 
chemical burns while in a hospital nursery.  Id.  We rejected 
this argument, stating that the relevant inquiry was not whether an injury 
should occur under a given set of circumstances but instead whether the proper 
performance of the medical procedure is commonly known.  Id.  
Because the proper use of an intravenous needle on an infant is not within the 
common knowledge of a layperson, we held that expert testimony of negligence was 
necessary and that res ipsa loquitur did not apply. Id.
        In 
this case, the Sheltons argue that a layperson would understand that a biopsy 
should be performed when a mammogram identifies a “suspicious site” and that 
a physician and hospital should follow their own policies and procedures before 
determining that a “suspicious site” is not cancerous.  Under Odak, 
however, this is not the relevant inquiry; instead, the relevant inquiry is 
whether the proper performance of cancer-diagnosing procedures is within the 
common knowledge of a layperson.  See id. Medical decisions 
about performing and interpreting mammograms, sonograms, biopsies, and other 
diagnostic procedures require professional training and are not common 
knowledge.  Similarly, the content of hospital policies and their 
underlying purposes and rationale are not commonly known by the average 
layperson.  Consequently, res ipsa loquitur does not apply to the 
Sheltons’ case, and expert testimony of appellees’ negligence was necessary 
to survive a no-evidence motion for summary judgment.  See id.; see 
also Haddock, 793 S.W.2d at 954 (holding res ipsa loquitur 
inapplicable to medical malpractice case involving use of sophisticated medical 
instruments and procedures not within the common knowledge of laypersons); Denton 
Reg’l Med. Ctr. v. LaCroix, 947 S.W.2d 941, 950-51 (Tex. App.—Fort Worth 
1997, writ denied) (requiring medical expert testimony of standard of care 
applicable to hospitals where the underlying issue involved the performance of 
medical procedures).
        Finally, 
the Sheltons argue that the trial court improperly granted summary judgment on 
all their claims because appellees did not amend their motions for summary 
judgment to address the Sheltons’ third amended petition and its theory of res 
ipsa loquitur, which the Sheltons filed just eight days before the summary 
judgment hearing.  Generally, a court may not grant judgment on a cause of 
action not addressed in a summary judgment proceeding.  Chessher v. S.W. 
Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983).  When the amended 
petition merely reiterates the same essential elements of the previously pleaded 
causes of action in another fashion, however, the existing motion for summary 
judgment will cover these new variations.  Lampasas v. Spring Ctr., Inc., 
988 S.W.2d 428, 437 (Tex. App.—Houston [14th Dist.] 1999, no pet.).
        Here, 
the Sheltons claim that the trial court’s summary judgments in favor of 
appellees could not have disposed of their res ipsa loquitur claim.  
But res ipsa loquitur is merely a rule of evidence by which a jury may 
infer negligence; it is not a separate cause of action apart from negligence. Haddock, 
793 S.W.2d at 950.  Therefore, the res ipsa loquitur theory raised 
in the Sheltons’ third amended petition was merely another manner of 
presenting their negligence cause of action.  Because appellees’ summary 
judgment motions already addressed the Sheltons’ negligence cause of action, 
they appropriately encompassed the res ipsa loquitur theory as 
well.  See Allen v. Albin, 97 S.W.3d 655, 669 (Tex. App.—Waco 
2002, no pet.) (holding that movant’s failure to specifically address 
plaintiff’s theory of res ipsa loquitur in no-evidence motion for 
summary judgment did not require reversal of summary judgment granted on 
plaintiff’s negligence cause of action); Lampasas, 988 S.W.2d at 437 
(holding that plaintiff’s amended petition filed after motion for summary 
judgment was adequately covered by the summary judgment motion because amended 
petition merely provided new theories of the original negligence cause of 
action).  We overrule the Sheltons’ fourth and fifth issues as to all 
appellees.
D. Negligence Per Se
        In 
their sixth issue, the Sheltons argue that the trial court erred in “failing 
to recognize the negligence committed by the Defendants with regard to the 
Mammography Quality Standards Act and its state counterpart.”  The 
Sheltons contend that these statutes and their associated regulations establish 
cancer reporting and follow-up procedures and that appellees’ alleged 
violations of the statutes and regulations constituted negligence as a matter of 
law.
        In 
a medical malpractice case, the plaintiff bears the burden of proving that the 
health care provider undertook a mode or form of treatment that a reasonable and 
prudent member of the medical profession would not have undertaken under the 
same or similar circumstances.  Hood v. Phillips, 554 S.W.2d 160, 
165 (Tex. 1977).  Unless res ipsa loquitur applies, expert testimony 
is required to meet this burden of proof.  See id. at 165-66.  
Because the Sheltons did not demonstrate that res ipsa loquitur applies 
to their claims, they cannot circumvent the requirement of expert testimony by 
merely substituting evidence of violation of a statute.  See Pack v. 
Crossroads, Inc., 53 S.W.3d 492, 509 (Tex. App.—Fort Worth 2001, pet. 
denied) (holding that breach of statute cannot be used as basis for negligence 
per se claim in a medical malpractice case because expert testimony is required 
to prove a cause of action for medical malpractice).  We overrule the 
Sheltons’ sixth issue as to all appellees.  Having overruled issues 
three, four, five, six, and part of issue two as to all appellees, we now 
examine the Sheltons’ remaining issues against each appellee individually.
E. Arlington Memorial Hospital
        The 
Hospital filed its no-evidence motion for summary judgment that forms the basis 
for this appeal on December 13, 2002, arguing that the Sheltons had produced no 
evidence of several essential elements of their negligence and negligence per se 
claims, including evidence of the standard of care applicable to the Hospital 
and evidence of causation.
        1.     Standard 
of Care
        A 
hospital may be liable for injuries arising from the negligent performance of a 
duty that the hospital owes directly to the patient.  LaCroix, 947 
S.W.2d at 950.  Before a fact finder can consider whether a hospital’s 
conduct is negligent, however, the plaintiff must first establish the standard 
of care.  Id.  The standard of care that a hospital is required 
to use in diagnosing cancer is that which a hospital of ordinary prudence would 
have used under the same or similar circumstances.  See id.
        In 
their second issue, the Sheltons complain that the trial court erred in striking 
Dr. Andrews’s affidavit. In addition to arguing that the Hospital’s 
objections to the affidavit were not timely filed, see supra Part III. 
A., the Sheltons assert that the Hospital’s objections to Dr. Andrews’s 
affidavit were without merit.  The Hospital objected to the affidavit on 
the grounds that Dr. Andrews was not qualified to submit an expert opinion 
relating to the Hospital’s conduct and that the opinion failed to establish 
the standard of care applicable to the Hospital or that any violation of such 
standard caused the Sheltons’ injuries.  The Hospital also objected to 
Dr. Andrews’s unsworn curriculum vitae attached to the affidavit as hearsay.
        The 
trial court has broad discretion to determine admissibility of expert evidence, 
and we will not reverse the trial court's ruling absent a clear abuse of that 
discretion.  Exxon Pipeline Co. v. Zwahr, 88 S.W.3d 623, 629 (Tex. 
2002).  To determine whether a trial court abused its discretion, we must 
decide whether the trial court acted without reference to any guiding rules or 
principles—in other words, whether the act was arbitrary or 
unreasonable.  See Carpenter v. Cimarron Hydrocarbons Corp., 98 
S.W.3d 682, 687 (Tex. 2002); Downer v. Aquamarine Operators, Inc., 701 
S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).  
Merely because a trial court may decide a matter within its discretion in a 
different manner than an appellate court would in a similar circumstance does 
not demonstrate that an abuse of discretion has occurred.  Downer, 
701 S.W.2d at 241-42.  The Sheltons, as the proponents of Dr. Andrews’s 
expert testimony, bore the burden of establishing that Dr. Andrews has 
"knowledge, skill, experience, training, or education" regarding the 
specific issue before the court that would qualify her to give an opinion on 
that particular subject. Tex. R. Evid. 702; see also Broders 
v. Heise, 924 S.W.2d 148, 153 (Tex. 1996).
        The 
Sheltons claim that Dr. Andrews’s experiences on tumor boards and boards and 
staffs of various hospitals provide her sufficient knowledge and experience to 
opine on the standard of care that a hospital should exercise to prevent a 
delayed diagnosis of cancer.  However, Dr. Andrews’s affidavit fails to 
state any knowledge that she possesses on the standard of care applicable to 
hospitals in cancer diagnosis.  Furthermore, regardless of whether the 
curriculum vitae attached to the affidavit is hearsay, the curriculum vitae 
merely states the titles and locations of Dr. Andrews’s hospital appointments 
without presenting the knowledge and experience that the Sheltons claim qualify 
her to testify on the standard of care applicable to hospitals.  On this 
record, we cannot hold that the trial court abused its discretion by striking 
Dr. Andrews’s affidavit.  See Broders, 924 S.W.2d at 153; see 
also Reed v. Granbury Hosp. Corp., 117 S.W.3d 404, 410-13 (Tex. App.—Fort 
Worth 2003, no pet.) (affirming trial court’s striking doctors’ testimony on 
standard of care applicable to hospitals because the record did not show that 
the doctors possessed any special knowledge about protocols, policies, or 
procedures a hospital of ordinary prudence would have had in place).  We 
overrule the Sheltons’ second issue as to the Hospital.
        2.     No-Evidence 
Summary Judgment
In 
their first issue, the Sheltons generally assert that the trial court erred in 
granting the Hospital’s motion for summary judgment.  The Hospital’s 
no-evidence motion for summary judgment argued that the Sheltons had produced no 
evidence of several essential elements of their claims.  After an adequate 
time for discovery, the party without the burden of proof may, without 
presenting evidence, move for summary judgment on the ground that there is no 
evidence to support an essential element of the nonmovant's claim or 
defense.  Tex. R. Civ. P. 
166a(i).  The motion must specifically state the elements for which there 
is no evidence.  Id.; Johnson v. Brewer & Pritchard, P.C., 73 
S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless 
the nonmovant produces summary judgment evidence that raises a genuine issue of 
material fact.  See Tex. R. 
Civ. P. 166a(i) & cmt.; S.W. Elec. Power Co. v. Grant, 73 
S.W.3d 211, 215 (Tex. 2002).
        We 
review the evidence in the light most favorable to the party against whom the 
no-evidence summary judgment was rendered.  Johnson, 73 S.W.3d at 
197; Morgan v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000).  If the 
nonmovant brings forward more than a scintilla of probative evidence that raises 
a genuine issue of material fact, then a no-evidence summary judgment is not 
proper.  Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.—San 
Antonio 1998, pet. denied).
        Without 
Dr. Andrews’s affidavit, the Sheltons have no expert testimony establishing 
the standard of care applicable to the Hospital.  Without expert testimony, 
the Sheltons cannot establish that the Hospital was negligent.  See 
Baird, 991 S.W.2d at 922 (stating that expert testimony is required on the 
issue of medical negligence).  Because res ipsa loquitur does not 
apply to the Sheltons’ claims against the Hospital, any alleged failure by the 
Hospital to follow its policies and procedures is no evidence of negligence in 
the absence of expert testimony. See id. at 921-22 (citing Hood v. 
Phillips, 554 S.W.2d 160, 165-66 (Tex. 1977)).
        The 
Sheltons assert that they need no medical expert testimony to defeat summary 
judgment because appellees did not “meet their threshold requirement” of 
establishing that they complied with the applicable standard of care and the 
Mammography Quality Standards Act and its state counterpart.  Under the 
no-evidence summary judgment standard, however, appellees were not required to 
produce any evidence at all; rather, the Sheltons bore the burden of producing 
more than a scintilla of probative evidence to raise a genuine issue of material 
fact on the elements challenged in appellees’ summary judgment motions, 
including the element of the standard of care challenged in the Hospital’s 
motion. See S.W. Elec. Power Co., 73 S.W.3d at 215.
        Because 
res ipsa loquitur did not apply to the Sheltons’ claims, the exclusion 
of Dr. Andrews’s affidavit meant that the Sheltons had no evidence of the 
standard of care, an essential element of their negligence cause of 
action.  Any evidence of a violation of the Mammography Quality Standards 
Act or any other law could not substitute for the requirement of medical expert 
testimony of negligence, which was absent from the Sheltons’ case against the 
Hospital. Accordingly, the trial court did not err in awarding summary judgment 
to the Hospital.  See Tex. R. 
Civ. P. 166a(i).  We overrule the Sheltons’ first issue.
        Having 
overruled all the Sheltons’ issues in their appeal against the Hospital, we 
need not address the Hospital’s conditional cross-point on appeal.  See 
Tex. R. App. P. 47.1 (stating that 
appellate court need only address issues necessary to final disposition of 
appeal). We affirm the trial court’s grant of summary judgment in favor of the 
Hospital.
F. Dr. Sargent
        Dr. 
Sargent filed his no-evidence motion for summary judgment on January 3, 2002, 
asserting that the Sheltons had produced no evidence of two elements of their 
negligence claim: breach of the standard of care and causation.  The trial 
court’s order specified that it granted Dr. Sargent’s motion because the 
Sheltons had failed to produce competent summary judgment evidence supporting 
the causation element of their claims against Dr. Sargent.
        1.     Sargent’s 
Objection to Expert Affidavit
        The 
Sheltons argue in their second issue that the trial court erred in striking Dr. 
Andrews’s affidavit. In addition to arguing that Dr. Sargent’s objections to 
the affidavit were not timely filed, see supra Part III. A., the Sheltons 
assert that the Hospital’s objections to Dr. Andrews’s affidavit were 
without merit. Dr. Sargent objected to the affidavit on the grounds that it (1) 
failed to establish that Dr. Andrews, a surgical oncologist, was qualified to 
render an expert opinion regarding the care provided by Dr. Sargent, a 
radiologist; (2) failed to state Dr. Andrews’s opinion on the applicable 
standard of care; (3) failed to set forth the foundation of the opinions; (4) 
failed to base Dr. Andrews’s opinion on a standard of reasonable medical 
probability; and (5) failed to express an opinion regarding causation. The trial 
court sustained Dr. Sargent’s objection and struck Dr. Andrews’s 
affidavit.  We review the exclusion of expert testimony under an abuse of 
discretion standard. Exxon, 88 S.W.3d at 629; Broders, 924 S.W.2d 
at 151.
                a.     Witness 
qualifications
        To 
qualify as an expert witness in a medical malpractice case, the expert need not 
necessarily be a specialist in the field of medicine at issue.  Broders, 
924 S.W.2d at 153.  Therefore, Dr. Andrews is not automatically 
disqualified from testifying about radiological care and treatment in the case 
against Dr. Sargent, a radiologist, merely because she is a surgical oncologist 
and not a radiologist.  However, the Sheltons, as proponents of the expert 
testimony, must establish that Dr. Andrews has "knowledge, skill, 
experience, training, or education" regarding the specific issue before the 
court which would qualify the expert to give an opinion on that particular 
subject. Tex. R. Evid. 702; Broders, 924 
S.W.2d at 153.
        The 
Sheltons did not establish that Dr. Andrews’s level of familiarity with 
radiology meets this standard.  While Dr. Andrews opined that Dr. Sargent 
should have retaken x-ray films of the hook wire localization and should have 
followed up with the other medical care providers on the negative pathology 
report, the record is devoid of any indication that she possessed any expertise 
or training in the field of radiology that would qualify her to make these 
opinions.  On this record, the Sheltons did not provide the trial court 
with the necessary information to ensure “that those who purport to be experts 
truly have expertise concerning the actual subject about which they are offering 
an opinion.”  Broders, 924 S.W.2d at 152.
                b.     Opinion 
on standard of care
        Dr. 
Sargent also objected to Dr. Andrews’s affidavit on the ground that it failed 
to state her opinion as to the applicable standard of care.  While the 
plaintiff bears the burden of establishing the standard of care in a medical 
malpractice case, a failure of the plaintiff’s expert to define the standard 
of care does not necessarily require the trial court to strike the expert’s 
affidavit: “Such a failure may ultimately go to the weight or value of the 
expert’s testimony to the fact finder, but not to its admissibility, or to the 
qualifications of the witness to testify.”  Warner v. Hurt, 834 
S.W.2d 404, 407 (Tex. App.—Houston [14th Dist.] 1992, no writ).  
Therefore, the trial court was not required to strike Dr. Andrews’s affidavit 
on this ground.
                c.     Foundation 
for reliability of opinion
        Dr. 
Sargent further complained that Dr. Andrews’s affidavit set forth conclusory 
opinions without any supporting basis or foundation explaining how she arrived 
at her opinions regarding the care provided by Dr. Sargent. A statement of an 
expert witness that has no facts to support the expert’s conclusions is 
insufficient to create a question of fact to defeat summary judgment because it 
is not credible or susceptible to being readily controverted.  McIntyre 
v. Ramirez, 109 S.W.3d 741, 749 (Tex. 2003); Ryland Group, Inc. v. Hood, 
924 S.W.2d 120, 122 (Tex. 1996).  Therefore, the expert affidavit must show 
the specific facts and reasoning on which the opinion is based, and it must link 
its conclusions to the facts. Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 
1999).
        Here, 
Dr. Andrews’s affidavit states that Dr. Sargent’s failures to take a 
follow-up mammogram three to six months after the biopsy, to require the 
Hospital’s personnel to follow policies and procedures, to retake films of the 
needle localization and hook wire placement, and to correlate the pathology 
report with the mammogram were below the standard of care.  However, Dr. 
Andrews did not refer to any recognized studies or otherwise explain the basis 
for her opinion that a mastectomy and broad field radiation therapy could have 
been avoided.  She did not refer to any scientific journals or texts, which 
might provide some basis for her conclusion that a lumpectomy “would have been 
a good option” for treating Mrs. Shelton’s breast cancer. Dr. Andrews did 
not explain why a follow-up mammogram taken a few months after the biopsy would 
have been appropriate, why retaking the films was medically necessary, or why 
correlation of the pathology report with the mammogram was needed.
        Because 
Dr. Andrews provided no facts, studies, or any type of explanation to support 
her conclusion that these actions would have led to an earlier cancer diagnosis, 
her affidavit lacks foundation and is conclusory.  Therefore, the opinions 
expressed do not provide any evidence that will defeat summary judgment.  See 
Blan v. Ali, 7 S.W.3d 741, 748 (Tex. App.—Houston [14th Dist.] 1999, no 
pet.) (holding affidavit that failed to explain how different treatment would 
have produced better outcome was insufficient to create a fact issue); Jordan 
v. Geigy Pharms., Inc., 848 S.W.2d 176, 179-80 (Tex. App.—Fort Worth 1992, 
no writ) (holding affidavit insufficient to raise a fact issue where it did not 
identify medical literature or other information upon which the expert’s 
opinion relied).
                d.     Reasonable 
medical probability; causation
        Dr. 
Sargent’s objection also asserted that Dr. Andrews did not base her opinion on 
a reasonable medical probability and that she rendered no opinion on any causal 
connection between Dr. Sargent’s alleged negligence and Mrs. Shelton’s 
injury.  A plaintiff cannot establish causation without showing a causal 
connection between the negligent act and the injury based on “reasonable 
medical probability.“  Duff v. Yelin, 751 S.W.2d 175, 176 (Tex. 
1988); Bottoms v. Smith, 923 S.W.2d 247, 251 (Tex. App.—Houston [14th 
Dist.] 1996, no writ).
        Dr. 
Andrews’s affidavit does state with a reasonable medical probability that had 
the breast cancer been diagnosed earlier, Mrs. Shelton “more likely than 
not” could have been treated with a less invasive lumpectomy.  The 
affidavit also states that the surgeon and radiologists’ failure to perform a 
follow-up mammogram three to six months after the biopsy “clearly led to an 
unreasonable delay in diagnosis.” Again, however, the affidavit provides no 
basis or foundation for any of these assertions.  Because Dr. Andrews 
failed to state facts or studies to support her conclusion that Mrs. Shelton 
would have avoided a mastectomy with a follow-up mammogram, her affidavit lacks 
foundation and is conclusory.  This conclusory affidavit is insufficient to 
raise a fact issue on causation.  See Ryland Group, 924 S.W.2d at 
122 (holding that “[c]onclusory affidavits are not enough to raise fact 
issues”); Hodgkins v. Bryan, 99 S.W.3d 669, 674-75 (Tex. App.—Houston 
[14th Dist.] 2003, no pet.) (holding that an expert’s conclusory statements 
submitted in an affidavit did not constitute competent summary judgment 
evidence).
        On 
this record, we cannot hold that the trial court abused its discretion by 
striking Dr. Andrews’s affidavit.  See McIntyre, 109 S.W.3d at 750 
(holding that trial court did not abuse its discretion in striking expert 
affidavit in medical malpractice case because affidavit contained no supporting 
facts or rationale for its conclusions); Broders, 924 S.W.2d at 152 
(holding that a doctor who specialized in emergency medicine could not testify 
about treatment of brain injuries because proponents of his testimony did not 
establish that he possessed the requisite knowledge, skill, experience, 
training, or education on the issue).  We overrule the Sheltons’ second 
issue as to Dr. Sargent.
        2.     No-Evidence 
Summary Judgment
        In 
their first issue, the Sheltons generally assert that the trial court erred in 
granting Dr. Sargent’s motion for summary judgment.  In a medical 
malpractice case, a plaintiff must prove that the negligence of the defendant 
physician proximately caused the injury alleged.  Hart v. Van Zandt, 
399 S.W.2d 791, 792 (Tex. 1965).  The ultimate standard of proof on the 
causation issue is “whether, by a preponderance of the evidence, the negligent 
act or omission is shown to be a substantial factor in bringing about the harm 
and without which the harm would not have occurred."  Park Place 
Hosp. v. Estate of Milo, 909 S.W.2d 508, 511 (Tex. 1995).  The trier of 
fact may decide the issue of causation in medical malpractice cases based upon 
(1) scientific principles provided by expert testimony allowing the fact finder 
to establish a traceable chain of causation from the condition back to the 
event; (2) a probable causal relationship as articulated by expert testimony; or 
(3) general experience and common sense from which reasonable persons can 
determine causation.  Marvelli v. Alston, 100 S.W.3d 460, 470 (Tex. 
App.—Fort Worth 2003, pet. denied) (citing Parker v. Employers Mut. Liab. 
Ins. Co., 440 S.W.2d 43, 46 (Tex. 1969)).
        Because 
we have determined that the trial court did not abuse its discretion in striking 
Dr. Andrews’s affidavit, the Sheltons have no expert affidavit to provide the 
scientific principles or probable causal relationship necessary to raise an 
issue of fact on the essential element of causation.  The Sheltons argue 
that “letter and deposition testimony” of Dr. Feuerberg also provided 
evidence of Dr. Sargent’s negligence and should have precluded the no-evidence 
summary judgment. No letter from Dr. Feuerberg was cited in any response to 
appellees’ motions for summary judgment, and the trial court was not required 
to search the record for it.  See supra Part III. B.  The only 
testimony of Dr. Feuerberg referenced in the Sheltons’ response to Dr. 
Sargent’s motion for summary judgment that addresses causation is Dr. 
Feuerberg’s statement that Dr. Sargent’s use of ultrasound guidance instead 
of mammography in performing the hook wire localization procedure on Mrs. 
Shelton’s breast “may very well be the reason for what has 
occurred.” [Emphasis added.]  This is far from the standard of 
“reasonable medical probability” required to establish a causal connection 
between Dr. Sargent’s hook wire localization and Mrs. Shelton’s delayed 
cancer diagnosis.  See Duff, 751 S.W.2d at 176.  Furthermore, 
because Dr. Feuerberg’s testimony provides no basis or foundation for this 
conclusory assertion, it is insufficient to raise an issue of fact on this 
element of the Sheltons’ negligence claims. See Ryland Group, 924 
S.W.2d at 122. Consequently, Dr. Feuerberg’s deposition testimony offers no 
evidence of causation.
        Next, 
the Sheltons argue that the acts of all health care providers in this case were 
so obviously negligent that they raise questions of fact even in the absence of 
Dr. Andrews’s expert affidavit.  It is true that even without expert 
testimony, the trier of fact may decide the issue of causation based upon 
general experience and common sense from which reasonable persons can determine 
causation.  Marvelli, 100 S.W.3d at 470. For example, in Manax v. 
Ballew, 797 S.W.2d 71 (Tex. App.—Waco 1990, writ denied), no expert 
testimony on causation was needed when a doctor operated on the wrong portion of 
the plaintiff’s back to remove a tumor because “[t]he fact of resulting 
injury . . . by the surgical incision was indisputable.” Id. at 73.
        This 
case, however, presents issues of causation that cannot be resolved by a 
layperson’s common sense.  The Sheltons contend in their brief that two 
“suspicious masses” were identified in the original mammogram and sonogram, 
only one of the suspicious masses was biopsied, and the unbiopsied mass 
eventually was diagnosed as cancerous.  However, there is no evidence 
supporting this contention in any of the evidence the Sheltons designated in 
their responses to appellees’ motions for summary judgment.  A 
layperson’s general experience does not include knowing how to diagnose 
cancer, how to identify “suspicious masses” that should be biopsied, or how 
to determine whether a portion of Mrs. Shelton’s breast that was not localized 
for biopsy by Dr. Sargent developed into cancer. Consequently, the Sheltons 
produced no evidence of causation.  As res ipsa loquitur and 
negligence per se do not apply, see supra Part III. C.-D., we overrule 
the Sheltons’ first issue.
        Having 
overruled all the Sheltons’ issues in their appeal against Dr. Sargent, we 
need not address Dr. Sargent’s two cross-points on appeal.  See Tex. R. App. P. 47.1.  We affirm 
the trial court’s grant of summary judgment in favor of Dr. Sargent.
G. ACC and Dr. Rettig
        ACC 
and Dr. Rettig filed two motions for summary judgment. Their first motion, filed 
December 6, 1999, argued that the statute of limitations had run on the 
Sheltons’ claims because they last treated Mrs. Shelton on March 13, 1997, but 
the Sheltons did not file suit until June 14, 1999—more than two years after 
the last date of treatment.  The trial court granted this first motion for 
summary judgment on May 5, 2000 but did not sever the claims against ACC and Dr. 
Rettig from the rest of the case.
        Because 
the trial court had not severed ACC and Dr. Rettig after granting the first 
summary judgment, ACC and Dr. Rettig filed a second summary judgment motion on 
January 29, 2002, after the Sheltons amended their petition to add their 
negligence per se theory of recovery.  ACC and Dr. Rettig again asserted a 
statute of limitations defense as a ground for summary judgment.  The 
Sheltons then added their res ipsa loquitur theory of negligence by 
filing their third amended petition on February 12, 2003.  The trial court 
granted summary judgment for ACC and Dr. Rettig and severed all claims against 
them on March 6, 2003.
        On 
appeal, the Sheltons do not discuss the limitations arguments raised by ACC and 
Dr. Rettig in their summary judgment motions.  The Sheltons maintain that 
their first issue, which generally challenges the trial court’s grant of 
summary judgment for appellees, is broad enough to encompass the limitations 
grounds, but their brief contains no argument, authorities, or citations to the 
record that address the limitations argument.
        An 
appellate contention must be supported by argument and authorities to be 
properly before this court. See Tex. 
R. App. P. 38.1(h); Karen Corp. v. The Burlington N. & Santa Fe Ry. 
Co., 107 S.W.3d 118, 125 (Tex. App.—Fort Worth 2003, pet. denied). We do 
not have a duty to perform an independent review of the record and applicable 
law to determine whether the error complained of occurred. See Hall, 919 
S.W.2d at 466-67.  The Sheltons do not challenge the statute of limitations 
grounds asserted by ACC and Dr. Rettig in both of their motions for summary 
judgment.  Accordingly, we must affirm the summary judgment for ACC and Dr. 
Rettig on this unchallenged ground.  See Wrenn v. G.A.T.X. Logistics, 
Inc., 73 S.W.3d 489, 493 (Tex. App.—Fort Worth 2002, no pet.) (holding 
that when summary judgment rests on more than one ground, appellant must 
challenge each ground on appeal, or judgment will be affirmed on ground about 
which no complaint is made).  We overrule the Sheltons’ first issue as to 
ACC and Dr. Rettig.
        In 
their second issue, the Sheltons complain that the trial court erred by striking 
Dr. Andrews’s affidavit.  Because we have determined that summary 
judgment for ACC and Dr. Rettig should be affirmed on statute of limitations 
grounds, we need not reach this issue.  Likewise, we need not address ACC 
and Dr. Rettig’s conditional cross-issue on appeal.  See Tex. R. App. P. 47.1.  We affirm 
the trial court’s grant of summary judgment in favor of ACC and Dr. Rettig.
IV. CONCLUSION
        Having 
overruled the Sheltons’ issues against each appellee, we affirm the trial 
court’s judgments.
 
  
                                                          BOB 
MCCOY
                                                          JUSTICE
 
 
PANEL A:   CAYCE, 
C.J.; GARDNER and MCCOY, JJ.
 
DELIVERED: July 8, 2004


NOTES
1.  
The Sheltons repeatedly assert that the mammogram and sonogram showed two 
“suspicious masses” in Mrs. Shelton’s breast, one at the nine o’clock 
position and one at the twelve o’clock position.  However, the record 
reflects that Dr. Rettig identified in his written review of the mammogram and 
sonogram an “irregular hypo-echoic soft-tissue mass” at the nine o’clock 
position, a “true cyst” at the twelve o’clock position, and four 
“aggregated cysts” at the eleven o’clock position of the breast.  Dr. 
Rettig’s evaluation goes on to label the soft-tissue mass “suspicious,” 
but it does not identify the “true cyst” at the twelve o’clock position as 
suspicious.  Moreover, Dr. Rettig suggested in his report a breast 
scintigraphy for the nine o’clock mass and then went on to state, “Otherwise, 
there are true cysts seen at the eleven and twelve o’clock positions.”  
[Emphasis added.]  The Sheltons have not directed us to any evidence in the 
record showing that the mammogram and sonogram revealed that the twelve 
o’clock “true cyst” was a “suspicious mass.”
2.  
42 U.S.C.A. § 263b (2000).
3.  
Tex. Health & Safety Code Ann. 
§§ 82.001-.011 (Vernon 2001).